IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:10-CV-64-D

| | | |
|---|---|---|
| STEVEN IVEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| FAIR LABOR RELATIONS AUTHORITY, | ) | |
| NATIONAL TREASURY EMPLOYEES | ) | |
| UNION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

The Internal Revenue Service ("IRS") fired Steven Ivey on March 7, 2001, and he has been upset and seeking redress in various forums since that date. This court is the latest venue. On November 22, 2010, Steven Ivey ("Ivey" or "plaintiff"), proceeding pro se, sued the Fair Labor Relations Authority ("FLRA" or "defendant"), the National Treasury Employees Union ("NTEU" or "defendant"), and three employees of the NTEU, Doug Van Buren ("Van Buren" or "defendant"), Lisa Porter ("Porter" or "defendant"), and Angela Strong ("Strong" or "defendant") (collectively, "defendants") Complaint [D.E. 1, Att. 1]. With his complaint, Ivey filed a motion for leave to proceed in forma pauperis [D.E. 1]. On January 7, 2011, this court denied Ivey's motion for leave to proceed in forma pauperis [D.E. 2]. On January 31, 2011, Ivey filed a new motion for leave to proceed in forma pauperis [D.E. 3]. On February 18, 2011, the court granted Ivey's new motion [D.E. 5]. On May 12, 2011, defendants moved to dismiss the suit pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure [D.E. 22] and filed a memorandum in support of their motion [D.E. 23]. On May 25, 2011, defendants filed a new motion and supporting

memorandum seeking to dismiss the action pursuant to Rules 12(b)(1) and 12(b)(5) of the Federal Rules of Civil Procedure [D.E. 26]. Alternatively, defendants seek summary judgment [D.E. 26 & Att. 2]. On May 25, 2011, the court notified Ivey of defendants' motions [D.E. 28]. On May 26, 2011, Ivey filed motions for sanctions and for default judgment [D.E. 30, 31], and a memorandum in support of his motions [D.E. 32]. On May 27, 2011, defendants responded in opposition to Ivey's motions [D.E. 33]. On May 27, 2011 and June 24, 2011, this court granted Ivey extended time to respond to defendants' motions [D.E. 34, 38]. Ivey then failed to respond by the July 15, 2011 deadline. As explained below, the court grants defendants' motions to dismiss under Rule 12(b)(1) and 12(b)(6), and denies Ivey's motions for sanctions and default judgment.

I.

Rule 12(b)(1) of the Federal Rules of Civil Procedure provides for dismissal of an action when the district court lacks subject-matter jurisdiction over a plaintiff's claims. Fed. R. Civ. P. 12(b)(1). "'[F]ederal courts are courts of limited jurisdiction,' constrained to exercise only the authority conferred by Article III of the Constitution and affirmatively granted by federal statute." In re Bulldog Trucking, Inc., 147 F.3d 347, 352 (4th Cir. 1998) (quoting Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978)). "When a Rule 12(b)(1) motion challenge is raised to the factual basis for subject matter jurisdiction, the burden of proving subject matter jurisdiction is on the plaintiff." Richmond, Fredericksburg & Potomac R.R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991). "The district court should grant the Rule 12(b)(1) motion to dismiss 'only if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law.'" Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999) (quoting Richmond, 945 F.2d at 768). The pleadings are construed in a light most favorable to the party opposing the motion. See Goldstar (Pan.) S.A. v. United States, 967 F.2d 965, 967 (4th Cir. 1992). When the court lacks

2

subject-matter jurisdiction, it has no authority to evaluate whether plaintiff's complaint fails to state a claim under Federal Rule of Civil Procedure 12(b)(6). See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 93–94 (1998); Invention Submission Corp. v. Rogan, 357 F.3d 452, 458 (4th Cir. 2004).

In analyzing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted, a court must determine whether the complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56, 563 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), cert. granted, 131 S. Ct. 3059 (2011); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007) (en banc); Kloth v. Microsoft Corp., 444 F.3d 312, 319 (4th Cir. 2006); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions drawn from the facts. Iqbal, 129 S. Ct. at 1949–50; Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 253 (4th Cir. 2009). Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Kloth, 444 F.3d at 319 (quotation omitted).

From 1999 to March 7, 2001, Ivey was an employee of the United States Treasury Department, working as a seasonal Data Transcriber for the IRS in Chamblee, Georgia. See Compl. 1; Defs.' Mem. Supp. 2d Mot. Dism. [D.E. 26, Att. 2], Att. 1 ("Undisputed Facts") ¶ 3. On March 7, 2001, the IRS terminated Ivey's employment. Id. Ivey claims that the IRS conspired with his union, the NTEU, to terminate his employment in retaliation for his whistle blowing activities, and that such a conspiracy violated the Civil Service Reform Act of 1978 ("CSRA"). Compl. 1–3, 5; Defs.' Mem. Supp. 2d Mot. Dism. 5; Undisputed Facts ¶ 4; see 5 U.S.C. § 7116(b). Ivey appealed

3

his termination to the Treasury's Merit Systems Protection Board, and the Board ruled against him in 2004 following a full hearing on the merits. Defs.' Mem. Supp. 2d Mot. Dism. 5, n.6; see Ivey v. Dep't of the Treasury, 2004 M.S.P.B. LEXIS 988 (M.S.P.B. Jan. 22, 2004), aff'd, 107 F. App'x 918, 919 (Fed. Cir. 2004) (per curiam) (unpublished).

On April 13, 2007, Ivey filed an unfair labor practice ("ULP") charge with the FLRA's Atlanta Regional Office. The FLRA is the independent administrative agency charged with enforcing the CSRA. See Compl. 5; Defs.' Mem. Supp. 2d Mot. Dism. 6; Undisputed Facts ¶ 4; Defs.' Mem. Supp. 2d Mot. Dism., Ex. C ("ULP Charge"); see generally 5 U.S.C. §§ 7101–7135. In his charge, Ivey claimed that NTEU representatives, acting in concert with Treasury officials, coerced him to sign a resignation letter and fabricated racial and homophobic slurs that they attributed to Ivey in support of his termination. Compl. 2; Undisputed Facts ¶ 5; ULP Charge 1–4. The FLRA's Atlanta Regional Director investigated Ivey's charge and declined to issue a complaint against the NTEU on August 24, 2007, finding that Ivey's charge was untimely. See Defs.' Mem. Supp. 2d Mot. Dism., Ex. D ("Regional Director Dismissal"); Undisputed Facts ¶ 6. On October 5, 2007, Ivey appealed the Regional Director's decision to the FLRA General Counsel, and the FLRA General Counsel denied the appeal on November 16, 2007. Defs.' Mem. Supp. 2d Mot. Dism., Ex. F ("General Counsel Order"); Undisputed Facts ¶¶ 7–8. On November 23, 2009, the FLRA General Counsel denied Ivey's request for reconsideration. Defs.' Mem. Supp. 2d Mot. Dism., Ex. H ("Denial of Reconsideration"); Undisputed Facts ¶¶ 9–10.

In this action, Ivey contends that defendants' conduct that resulted in his termination violated his "states [r]ights as a private citizen," including rights under the First Amendment, the Fifth Amendment, the CSRA, the Fair Labor Standards Act, 42 U.S.C. §§ 1981, 1983, 1986, and 1988, and Title VII of the Civil Rights Act of 1964. See Compl. 6, 14–15. He seeks "compensatory

4

damages, future offset damages, punitive damages, cost involved in the prosecution of the complaint, and related fees of processing [the] complaint." Id.

II.

The CSRA governs labor relations between the federal government and many of its employees. See Pub. L. 95-454, 92 Stat. 1111. The CSRA created the FLRA, a three-member board charged with administering the statute. 5 U.S.C. §§ 7104–7105. The FLRA General Counsel is responsible for "investigat[ing] alleged unfair labor practices under [the CSRA]" and "fil[ing] and prosecut[ing] complaints under [the CSRA]." 5 U.S.C. § 7104(f)(2)(A)–(B). A staff located at seven regional offices assists the FLRA General Counsel in investigating claims and prosecuting complaints. See 5 C.F.R. § 2423.8; Defs.' Mem. Supp. 2d Mot. Dism. 4.

When a federal employee files a ULP charge with the FLRA General Counsel's office, the appropriate regional director investigates the charge. 5 C.F.R. §§ 2423.4, 2423.8(a). After the investigation, the regional director may approve a request to withdraw the charge, dismiss the charge, approve a written settlement, issue a complaint,[1] or withdraw a complaint. When the regional director determines that there is no reason to issue a complaint, he or she dismisses the charge and issues a dismissal letter, providing "a written statement of the reasons for not issuing a complaint." 5 C.F.R. § 2423.11(a)–(b). The charging party may appeal the regional director's dismissal letter to the FLRA General Counsel. 5 C.F.R. § 2423.11(c). The FLRA General Counsel then may deny the appeal or may grant the appeal and remand the charge to the regional director. 5 C.F.R. § 2423.11(f). Absent a motion for reconsideration, the FLRA General Counsel's decision is final. Id.

---

[1]The regional director issues a complaint "[w]henever formal proceedings are deemed necessary." 5 C.F.R. § 2423.20. The regional director files the complaint with the Office of Administrative Law Judges, which then conducts a hearing into the alleged ULP. Id.

5

The charging party may move for reconsideration of the FLRA General Counsel's decision upon a showing of "extraordinary circumstances"; however, the FLRA General Counsel's decision in response to a motion for reconsideration is final. 5 C.F.R. § 2423.11(g).

An employee has no judicial recourse after appeal to the FLRA General Counsel concerning whether to issue a complaint. Rizzitelli v. Fed. Labor Relations Auth., 212 F.3d 710, 712 (2d Cir. 2000); Patent Office Prof'l Ass'n v. Fed. Labor Relations Auth., 128 F.3d 751, 753 (D.C. Cir. 1997); Am. Fed'n of Gov't Emps., Local 1749 v. Fed. Labor Relations Auth., 842 F.2d 102, 103–04 (5th Cir. 1988) (per curiam); Martinez v. Smith, 768 F.2d 479, 480 (1st Cir. 1985) (per curiam); Turgeon v. Fed. Labor Relations Auth., 677 F.2d 937, 939 (D.C. Cir. 1982) (per curiam). Essentially, the "General Counsel has unreviewable discretion in [these] matters." Turgeon, 677 F.2d at 940. Congress intended the FLRA General Counsel to be autonomous "in making final decisions as to which cases to prosecute." Local 1749, 842 F.2d at 104 (quotations omitted). While federal courts do have jurisdiction to review a "final order of the [FLRA]," 5 U.S.C. § 7123, a decision to not file a complaint in response to a ULP charge is reserved for the FLRA General Counsel alone and not for a "final order of the [FLRA]." Rizzitelli, 212 F.3d at 712. To the extent that Ivey seeks to contest the FLRA General Counsel's decision to not file a complaint in response to his charge, this court lacks subject-matter jurisdiction. See, e.g., Karahalios v. Nat'l Fed'n of Fed. Emps., 489 U.S. 527, 533 (1989) ("Indeed, the General Counsel . . . was to have exclusive and final authority to issue unfair labor practice complaints, and only those matters mentioned in § 7123 were to be judicially reviewable."); Rizzitelli, 212 F.3d at 712.

In opposition to this conclusion, Ivey argues that his federal lawsuit concerns "[r]ight[s] of a citizen to pursue even if [he] had not been a US [sic] Treasury employee." Compl. 5. As mentioned, his federal lawsuit includes claims arising under the First Amendment, the Fifth

6

Amendment, the CSRA, the FLSA, 42 U.S.C. §§ 1981, 1983, 1986 and 1988, and Title VII. Id. 6, 14.[2] He then argues that these claims provide the court with an independent basis for exercising subject-matter jurisdiction. See id.

Ivey's argument fails. The FLRA has exclusive jurisdiction over the CSRA and ULP claims. See Karahalios, 489 U.S. at 533. Although Ivey now seeks to raise civil rights and constitutional claims, when these claims are "intertwined with a statutory one, and Congress has provided machinery for the resolution of the latter, a plaintiff must first pursue the administrative machinery." Steadman v. Governor, U. S. Soldiers' and Airmen's Home, 918 F.2d 963, 967 (D.C. Cir. 1990); see also Council of Prison Locals v. Brewer, 735 F.2d 1497, 1500 (D.C. Cir. 1984) (holding that the existence of an FLRA administrative remedy "forecloses the assumption of general federal question or mandamus jurisdiction"). The claims that Ivey cites as providing an independent basis for jurisdiction arise from the same facts that led to his termination; therefore, they are "intertwined" with his statutory claims and subject to the CSRA's review procedure. Accordingly, this court lacks subject-matter jurisdiction to hear them, and grants defendants' motion to dismiss pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure.

Alternatively, even if the court has jurisdiction over his non-CSRA claims, Ivey has failed to state a claim upon which relief can be granted under Rule 12(b)(6). Simply put, the doctrine of claim preclusion, relevant statutes of limitations, and basic principles of federal employment law bar Ivey's claims against all defendants. In light of this ruling, the court need not and does not consider

---

[2]Ivey also makes reference to "slander and libel," id. 6, and mentions that he is bringing his action under "North Carolina Civil Rights Statutes," id. 14. However, the court does not construe these disparate references as amounting to a slander or libel claim arising under state law over which plaintiff urges this court to exercise supplemental jurisdiction. Even if Ivey were trying to state such a claim under North Carolina law, North Carolina's one-year statute of limitations bars the claim. See N.C. Gen. Stat. § 1-54(3).

7

defendants' motion to dismiss under Rule 12(b)(5) or their motion for summary judgment under Rule 56.

III.

In sum, defendants' motions to dismiss under Rule 12(b)(1) and 12(b)(6) [D.E. 22, 26] are GRANTED. Defendants' remaining motions [D.E. 26] are DISMISSED as moot. Plaintiff's motions for sanctions and default judgment [D.E. 30, 31] are DENIED. The Clerk of Court is DIRECTED to close this case.

SO ORDERED. This 21 day of October 2011.

JAMES C. DEVER III
Chief United States District Judge

8

Case 2:10-cv-00064-D  Document 40  Filed 10/21/11  Page 8 of 8